**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
EASTERN DIVISION**

**GARY DEAN LAGERSTROM**  **PLAINTIFF**
Reg. # 37670-079

V.     NO. 2:08CV00189-SWW-BD

**HIPOLITO MATOS, et al.**  **DEFENDANTS**

**RECOMMENDED DISPOSITION**

**I.**   **Procedure for Filing Objections:**

The following recommended disposition has been sent to United States District Court Judge Susan Webber Wright. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than eleven (11) days from the date you receive the Recommended Disposition. A copy will be furnished to the opposing party. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

Mail your objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR 72201-3325

## II.     Background:

Plaintiff, a federal inmate currently confined at the Federal Correctional Institution in Forrest City, Arkansas, brings this action pro se under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971).  In his Complaint, Plaintiff alleges that since January 2003, he has experienced significant lower back pain.  Plaintiff complains that Defendants have continually ignored his medical condition and have failed to provide him adequate medical care.  Plaintiff bring this lawsuit against Hipolito Matos and N. Shah, in both their official and individual capacities.  Plaintiff requests monetary damages as well as injunctive relief.

Defendants have filed a Motion for Summary Judgment (docket entry #18).  In the Motion, Defendants argue that: (1) Plaintiff has failed to state a deliberate indifference claim, as a matter of law; (2) Plaintiff failed to make any allegations against Defendant Shah in his Complaint; and (3) Defendants are entitled to qualified immunity.[1]  Plaintiff has not responded to Defendants' Motion.  As a result, all facts contained in Defendants'

---

[1] In his Complaint, Plaintiff also named the United States and the Bureau of Prisons as party Defendants.  Although Defendants have moved to dismiss all claims against these parties in their Motion for Summary Judgment, the Court previously dismissed both the United States and the Bureau of Prisons from this action (#8).  Accordingly, Defendants' request should be DENIED as moot.

Statement of Facts will be deemed admitted. See Local Rule 56.1(c). The Court recommends that Defendants' Motion (#18) be GRANTED.

### III. Analysis:

A. Standard

Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of material fact. FED. R. CIV. P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 246 (1986). Once the moving party has successfully carried its burden under Rule 56(c), the nonmoving party has an affirmative burden to go beyond the pleadings and by depositions, affidavits, or otherwise, designate "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *Mosley v. City of Northwoods*, 415 F.3d 908, 910-11 (8th Cir. 2005) ("The nonmoving party may not 'rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial.'" (quoting *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995))). If the opposing party fails to carry that burden or fails to establish the existence of an essential element of its case on which that party will bear the burden of proof at trial, summary judgment should be granted. See *Celotex,* 477 U.S. at 322. "Although it is to be construed liberally, a *pro se* complaint must contain specific facts supporting its conclusions." *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985).

B.   Deliberate Indifference

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a federally protected right and show that the alleged deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48, 108 S.Ct. 2250 (1988). Prison officials or their agents violate the Eighth Amendment if they commit "acts or omissions sufficiently harmful to evidence deliberate indifference to [an inmate's] serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285 (1976). The Eighth Circuit Court of Appeals has interpreted this standard as including both an objective and a subjective component: "The [plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs." *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997). "The prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation." *Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995). See also *Smith v. Marcantonio*, 910 F.2d 500, 502 (8th Cir. 2000) (holding that an inmate's disagreement with or displeasure with his course of treatment is not actionable under § 1983).

Here, Plaintiff alleges that he has complained about significant lower back pain since his arrival at the Federal Correctional Institution in Marianna, Florida, in January 2003. After Plaintiff was transferred to the Federal Correctional Institution in Forrest City,

4

Arkansas, in September 2004, Plaintiff's complaints persisted. Most recently, Plaintiff complains that he is experiencing numbness and tingling in his lower legs. Plaintiff states that he has not seen a specialist, nor has an MRI been conducted to determine the source of his pain or whether any surgical procedure is needed.

In support of their Motion for Summary Judgment, Defendants provide the Declaration of Defendant Matos along with Plaintiff's medical records. These medical records indicate that Plaintiff began complaining about lower back pain in January 2003. At that time, Plaintiff informed medical staff at the Federal Correctional Institution in Marianna, Florida, that he suffered from arthritis and chronic lower back pain. On January 10, 2003, an x-ray of Plaintiff's back was performed. The results indicated that Plaintiff had a possible longstanding L3-4 disc disease with no acute changes. The x-rays also showed that Plaintiff's L5-S1 disc was obliterated because of sacralization and that there might be relative height loss of the L3-4 disc. However, it was not until August 2003, that Plaintiff informed medical staff in Marianna that he had a history of lower back pain due to a water skiing accident that occurred when he was twenty-seven years old. After this information was learned, Plaintiff was added to the orthopedic chronic care clinic and was provided a prescription for Salsalate. In addition, further diagnostic studies were requested.

In February 2004, Plaintiff again complained of lower back pain to the Marianna medical staff. At that time, Plaintiff was advised to schedule an appointment with his primary care provider.

In September 2004, Plaintiff arrived at the Federal Correctional Institution in Forrest City, Arkansas. During his medical intake screening, Plaintiff noted that he suffered from arthritis.

Based on the medical records provided, it appears that Plaintiff first complained of lower back pain to the Forrest City medical staff in late January 2005. At that time, he requested either an increase in the dosage of his pain medication or a change in pain medication. Physician notes indicate that Plaintiff had degenerative joint disease and was advised to take his pain medication.

In May 2005, Plaintiff again complained about pain in his lower back. At that time, Plaintiff's x-rays were reviewed and his pain medication was refilled.[2]

In September 2005, Plaintiff complained of lower back pain accompanied with numbness and tingling in his lower legs over the last several months. At that time, physicians again reviewed Plaintiff's x-rays and ordered new x-rays.

On September 15, 2005, another x-ray of Plaintiff's back was taken. At that time, x-rays revealed that Plaintiff had normal alignment of vertebrae with normal vertebral body height and slight narrowing of the L4-5 level.

---

[2] Based upon Plaintiff's medical records, it appears that he requested refills for his Salsalate prescription on March 23, 2003, September 2, 2003, September 3, 2003, October 31, 2003, November 17, 2003, January 28, 2004, September 21, 2004, November 5, 2004, and May 3, 2005. Each time such a request was made, medical staff responded in a timely manner.

On October 11, 2005, Plaintiff was seen by medical staff for a follow-up visit for both an ear infection and lower back pain. At that time, Plaintiff was advised to continue taking his pain medication.

On May 21, 2006, Plaintiff arrived at the health services unit in Forrest City via ambulance complaining of lower back pain. Plaintiff informed medical staff that when he awoke that morning, he could not get out of his bed. However, Plaintiff also told medical staff that he had done at least one lap around the recreation yard that morning. The evaluating nurse found no evidence of acute pain. The clinical director was informed of the findings and ordered Motrin for Plaintiff. Plaintiff was instructed to continue his current pain medication regimen and to return to the clinic if the pain did not subside.

Although Plaintiff was seen by medical staff for several follow-up visits after May 2006, Plaintiff did not complain again of back problems until May 2007. At that time, Plaintiff returned to the medical staff with complaints of a boil on his back. On May 21, 2007, Plaintiff initially was treated for the boil. Plaintiff received follow-up treatment for problems associated with the boil for the next five days.

Plaintiff's medical records indicate that he again complained about lower back pain in August 2007. At that time, the clinical director ordered x-rays and laboratory tests. On September 28, 2007, x-rays of Plaintiff's back again were taken. Dr. Nguyen (not a party to this action) concluded that Plaintiff suffered abnormal mild diffuse degenerative changes.

In November 2007, Plaintiff returned to the health unit at the Federal Correction Institution in Forrest City to discuss the September 2007 x-rays with Defendant Matos. Plaintiff was informed that the x-rays revealed that Plaintiff had abnormal mild diffuse degenerative changes. At that time, Plaintiff requested an MRI or an orthopedic consult. Based upon intermittent nature of Plaintiff's back pain, Defendant Matos denied Plaintiff's requests. Defendant Matos instructed Plaintiff to continue taking his pain medication and to continue lower back strengthening exercises. Plaintiff was scheduled for a follow up visit at that time.[3]

Since November 2007, although Plaintiff has returned to the health unit for other medical problems, based upon the medical records provided, he has not made any other complaints regarding lower back pain.[4]

According to the undisputed evidence, it appears that Defendants responded to every request made by Plaintiff in a timely fashion. Not only have multiple doctors examined Plaintiff and Plaintiff's medical file, multiple x-rays have been taken. Although these tests may not have provided Plaintiff with the answers he seeks, he can hardly claim that Defendants have disregarded his serious medical needs. See *Estelle v. Gamble*, 429 U.S.

---

[3] Plaintiff's medical records do not provide a date for Plaintiff's follow-up visit with Defendant Matos. However, Plaintiff did not appear for his appointment on May 15, 2008.

[4] On September 12, 2008, x-rays were taken of Plaintiff's shoulder and back due to complaints of a shoulder injury. Those x-rays indicate Plaintiff suffers from degenerative joint disease/disc disease.

97, 107, 97 S.Ct. 285 (1976) (where medical personnel saw inmate seventeen times in three months and treated back strain with bed rest, muscle relaxants, and pain relievers, their failure to x-ray his broken back or implement other diagnostic techniques or treatment was not deliberate indifference); *Sherrer v. Stephens*, 50 F.3d 496 (8th Cir. 1994) (holding that treatment of inmate's broken finger did not rise to the level of deliberate indifference based on evidence that he received x-rays, painkillers, instructions to apply ice, and was examined by orthopedists); and *Bellecourt v. United States*, 994 F.2d 427, 431 (8th Cir. 1993) (holding that although physician misdiagnosed inmate's condition and method of physical examination and treatment might not have comported with community standards, conduct did not amount to deliberate indifference).

Moreover, Plaintiff has failed to submit evidence that Defendants either ignored "an acute or escalating situation" or that the delays adversely affected his prognosis. *Givens v. Jones*, 900 F.2d 1229, 1233 (8th Cir. 1990). Thus, Plaintiff's desire for either an MRI or a consult with an orthopedic specialist is merely a disagreement with the course of medical treatment and does not state a constitutional claim. Accordingly, the Court finds that Defendants are entitled to judgment as a matter of law.

C. Defendant Shaw

In addition, in their Motion, Defendants argue that Defendant Shaw should be dismissed from this lawsuit because Plaintiff fails to make any allegations against Defendant Shaw in his Complaint. The Court agrees. Although Defendant Shaw is named

in the caption of Plaintiff's Complaint, Defendant Shaw is not mentioned when Plaintiff describes the events giving rise to this lawsuit. Plaintiff does not attribute any unconstitutional conduct to Defendant Shaw; nor does Plaintiff state how he suffered any injury based upon Defendant Shaw's conduct. As a result, Defendant Shaw also is entitled to dismissal on this basis. See *Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir. 1985) (where plaintiff did not allege that defendant was personally involved in or had direct responsibility for incidents that injured him, his claims against such defendant were not cognizable under § 1983).

    D.    Qualified Immunity

In their Motion for Summary Judgment, Defendants also claim that they are entitled to qualified immunity. However, because the Court finds that Plaintiff has failed to state a constitutional claim as a matter of law, it is not necessary to address Defendants' qualified immunity argument in this Recommendation. Only if the Court had found an actionable constitutional claim would it have determined whether Plaintiff's rights were "clearly established" at the time of the alleged violation. See *Robinson v. White County, Ark.*, 452 F.3d 706, 711-12 (8th Cir. 2006).

**IV.    <u>Conclusion</u>:**

The Court recommends that Defendants' Motion for Summary Judgment (#18) be GRANTED and that Plaintiff's claims be DISMISSED WITH PREJUDICE.

DATED this 26th day of February, 2009.

_____
UNITED STATES MAGISTRATE JUDGE